## WILLIAM GILBERT *vs.* DELOS SHOWERMAN *et. al.*

Whenever a locality loses its character as a place suitable for a place of residence and becomes essentially a manufacturing neighborhood, where the business generally carried on is hostile to and inconsistent with its use as a place of residence, a court of equity will not interfere to prevent the carrying on of the business of manufacturing, even though the trembling motion and noise thereby occasioned, renders it almost impossible to use adjoining premises as a dwelling.

*Wayne Circuit, July,* 1871.

*Ward & Palmer,* for Complainant.

*Moore & Griffin,* for Defendants.

*By the Court,* PATCHIN, J.—This is a bill for an injunction to close a a grist mill situated on Jefferson avenue, in what is known as the Union Block, in the city of Detroit.

The mill was put in an ordinary building, used for the purpose of a store, but with buildings on each side, and upon a foundation separate and distinct from the walls of the buildings.

It is conceded that the complainant has resided over the store next to the mill a number of years before defendants put in the machinery, and while it was being put in, and that he did not make any objection to it, and has not since that time until the bill in this case was filed.

It is claimed on the part of the complainant that the trembling motion and noise caused by running the mill is so great as to be a nuisance and that it is impossible to use his own premises for the purposes of a dwelling, as he has before the mill was placed there.

It is claimed on the part of the defendants that the block is not suitable for dwellings, and that the business of milling as conducted by them is in keeping with the business carried on in the remainder of the block.

The question involved in the case at bar is, whether a given locality, having once been used for a certain purpose, can afterwards, and while it is being used by those occupying it in the first instance, be so used by a new comer as to effectually drive out the first occupant, or, in other words, if a locality be first used for purposes of dwellings, must it ever afterwards be occupied for the same purposes, or, *vice versa,* if for purposes of manufacturing, must that particular locality be exclusively used for that purpose?

Except as establishing general principles in regard to the subbject, the books can be of but little use.

So much depends upon the circumstances of each case that it is impossible to lay down any general rule that will apply to all.— That no man can forsee what particular localities in a large city will be used for purposes of residence or otherwise, perhaps will be conceded by all. Any one acquainted with the early history of our own city will concede that business does not remain in particularlocalities, but is constantly advancing as the city enlarges.

It is quite clear that business suitable to be conducted only in the outskirts of a city, such as cattle yards, etc., must give place to others whenever the particular locality can no longer be called outskirts, but has become a thickly populated portion of the city proper, where it would be conceded in the first instance to be improper to establish such a class of business. The same rule certainly ought to apply to residences. Whenever a locality loses its character as a place suitable for them and becomes essentially a manufacturing neighborhood, where the business generally carried on is hostile to and inconsistent with its use as a place of residence, the one must give place to the other.

It follows, therefore, that in the case at bar, residences having generally been superseded by business, the locality can no longer be considered as adapted to any other purposes than business, and the few domiciles that chance to remain must from the necessities of the case change their locality.

The motion for an injunction must be denied and the bill dismissed with costs.